**Ralph GALBRAITH, Appellant (Defendant below),**

v.

**STATE of Wyoming, Appellee (Plaintiff below).**

**No. 4064.**

Supreme Court of Wyoming.

Dec. 7, 1972.

David G. Manter, Denver, Colo., Vincent A. Ross, Cheyenne, for appellant.

Clarence A. Brimmer, Atty. Gen., Donald L. Painter, Special Asst. Atty. Gen., Cheyenne, Robert B. Ranck, County Atty., Jackson, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

Appellant prosecutes this appeal from a judgment and sentence for forcible rape committed in Jackson, Wyoming, on October 29, 1970, upon Sheryl Saunders. This charge was tried to a judge without intervention of a jury, defendant having waived this right. After trial the judge found defendant guilty and sentenced him to a term of imprisonment in the Wyoming State Penitentiary.

A brief factual background of this incident reveals that Sheryl was on her way home from attending a movie about 10 p. m.; that she was stopped by a man (whom she identifies as defendant) who asked for street directions; that he walked away and shortly returned, asking for directions to a drugstore; that he turned and almost immediately grabbed her from behind and forced her, screaming and biting, to a bench near the high school football field where he raped her; that at the conclusion of the act she lay for a few seconds until she thought it safe, then she ran to the Harrington home nearby where they observed her to be hysterical, with blood on her face, and dirty and disheveled. In the course of the investigation she was taken to the hospital where Dr. Cook examined her. The doctor's testimony of the results of this examination is not full or complete but he said they were "compatible with her complaint." She was returned to the scene of the incident and there demonstrated to officers the sequence of events. Investi-

gating officers made inquiry of her if this was committed by a named man and she was shown a picture. She immediately denied that he was the one responsible. A search was made of Jackson for some person answering the description she gave and a tour was made of the bars, but she did not indicate any person as her assailant. Some five days later Sheryl sat with Grant Hagen, an artist, who from her description prepared a drawing that in some respects resembled this defendant. On November 9 she was shown nine pictures of potential defendants but she did not identify any of these as her assailant. Five days thereafter (November 14) twelve more pictures were submitted to her for examination. This group of pictures included one of Galbraith, whom she identified as the perpetrator of this rape.

Thereafter, on March 25, 1971, she went to Pocatello, Idaho, where she identified defendant in a lineup. Defendant was represented by his own counsel at that time and neither the lawyer nor defendant made any objection to the conduct or fairness of the lineup procedures.

Galbraith was returned to Jackson, where after a preliminary hearing he was bound over to the district court and was tried on the information filed against him beginning July 20, 1971. The court had theretofore granted a change of venue to Green River in the Second Judicial District, but after waiver of a jury trial the parties agreed the case should be heard and tried before the court in Jackson.

■ Galbraith urges two grounds as the basis for reversal. These are stated in his brief as follows:

"The trial court committed error in allowing the prosecutor to impeach the accused for non-felony convictions and prior bad conduct."

"Defendant's trial counsel's errors of law and failure to vigorously defend at his trial amount to ineffective assistance of counsel denying defendant due process of law."

Appellant does not recognize or make any distinction between trials to juries and trials to the court in connection with the first ground and cites authority based upon the reception of such evidence in jury cases. By prior decisions of this court it has been held that there is a presumption on appeal that the trial court disregarded improperly admitted evidence unless the record affirmatively shows the trial court's decision was influenced by such evidence, X v. Y, Wyo., 482 P.2d 688, 691; Russell v. Curran, 66 Wyo. 173, 206 P.2d 1159, 1167; Yount v. Strickland, 17 Wyo. 526, 101 P. 942, 944. These are not criminal cases but other courts have had no difficulty nor have they hesitated in applying this rule to criminal appeals, Peterson v. State, 157 Neb. 618, 61 N.W.2d 263, 265; United States v. Stanley, 7 Cir., 411 F.2d 514, 516, certiorari denied 396 U.S. 959, 90 S.Ct. 432, 24 L.Ed.2d 423; United States v. Dillon, 5 Cir., 436 F.2d 1093, 1095; People v. Robinson, 30 Ill.2d 437, 197 N.E.2d 45, 47.

■ Appellant's basis for this first claim of error is in reference to four separate incidents in the reception of testimony. In two instances no objection was made thereto so we will not consider them. Of the remaining two instances the first related to an occurrence involving a Linda Ross in Ogden, Utah, in September 1969. Objection was made as to the remoteness and foundation. That objection was sustained as to the foundation. After some colloquy defendant was asked, "Do you recall having grabbed her at 1 o'clock a. m. in the morning in Ogden, Utah?" Objection was then made to the question that it was not proper—that the matter of concern was the offense, not the details at that time. The court made no ruling thereon but remarked, among other things, that there would have to be some similarity between the two incidents before the answer would be permitted. Without further ruling, the defendant apparently volunteered, "I pled guilty to this before a district judge; however, I did not grab her." No

motion to strike was made following the answer.

A second objection was made when reference was made to an incident involving Linda Browning on May 15, 1969, in Ogden, Utah. When defendant asked if he pleaded guilty in that case to battery there was again an objection to foundation and remoteness. The court overruled the objection. The record shows no details of these incidents. The court could not have determined any similarity, which it recognized as the only possible basis for admissibility of this evidence. The judge must be credited with being able to follow his own mental processes and his clear indication that the only basis upon which he could consider it would be that of similarity. It is entirely possible that trial counsel instead of moving to strike these answers or object further rested upon this expressed view of the trial court. We find the case of Birmingham v. State, 228 Wis. 448, 279 N.W. 15, 17, 116 A.L.R. 554, particularly persuasive. This case involved a charge of statutory rape, and although the appellate court viewed certain evidence of other offenses as having been improperly received and inadmissible, indicating it would have been grounds for reversal if it had been a jury trial, it affirmed the conviction.

■■■ The case of Johnson v. State, Tex.Cr.App., 428 S.W.2d 347, 348, involved a charge of aggravated assault tried to the court. On cross-examination the prosecuting attorney asked whether the defendant had ever been in a stolen car or whether he was a public drunk or wino. The court, commenting upon this, said:

> "While the questions were improper, in a trial before the court it will be presumed that any evidence improperly admitted was disregarded. [Citing cases.]"

In pursuing his argument on this ground appellant cites authority and asserts that we have adopted the rule that only felonies are proper subjects of examination and then only insofar as they affect defendant's credibility, State v. Hines, 79 Wyo. 65, 331 P.2d 605, 611, certiorari denied 366 U.S. 972, 81 S.Ct. 1938, 6 L.Ed.2d 1261; State v. Velsir, 61 Wyo. 476, 159 P.2d 371, 375–376, 161 A.L.R. 220. This is true but he fails to recognize that we have also held that evidence of other offenses may be received for other purposes than as affecting the defendant's credibility, Valerio v. State, Wyo., 429 P.2d 317, 318.

■■■ The record certainly does not affirmatively show that the trial court was influenced by such evidence, X v. Y, supra. Appellant in his brief makes no attempt to make such showing, contenting himself with the observation, "Their admission can serve only one purpose—to poison and prejudice the mind of the trier of fact," with the further observation that this violates basic evidentiary rulings and dictates reversal of the conviction. This comes far from any affirmative showing which would overcome the presumption indulged in when cases are tried directly to the judge. Appellant chooses to brush aside the statements of the trial judge made at various times in response to objections, indicating that evidence of other crimes would not be proper to show possible criminal characteristics and its only purpose might reflect some evidence as to the identity or the alibi; that it could be received solely if it went to identity, alibi, modus operandi, frame of mind, or intent; and the court would require a showing of similarity between the acts and the crime charged, with the further observation that the fact that defendant was involved in any other cases would not weigh as against his guilt or innocence in this case.

We have examined the record carefully and believe appellant wholly fails to demonstrate that the trial court was in any manner influenced by the admission of these acts. There is certainly sufficient evidence from which the judge, as the trier of the facts, could well have determined the guilt of the defendant. If the admission of such evidence were error and a question of necessary decision herein, under the presumption above mentioned, we

could not find it reversible or prejudicial error.

It is always troublesome when new counsel upon appeal asserts the trial counsel was incompetent and inadequate and failed as a result thereof to assure the defendant was not deprived of due process. As has been remarked, the assertion that "my lawyer was incompetent" should be carefully scrutinized.[1] The scrutiny of such an objection is properly based upon a background as suggested in United States v. Rubin, 5 Cir., 433 F.2d 442, 444, certiorari denied 401 U.S. 945, 91 S.Ct. 961, 28 L.Ed.2d 228, where it was said:

> "Taking a hindsight view, many convicted defendants may condemn their counsel as ineffective. But the command of the constitution is for a battle, not a victory, as Judge Goldberg pointed out for us in Odom v. United States, 5 Cir., 1967, 377 F.2d 853, 859. The standard was articulated by Judge Wisdom in MacKenna v. Ellis, 5 Cir., 1960, 280 F.2d 592, 599: 'We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance.' We have never deviated from these principles. * * *"[2]

Appellant presents us with a litany of disapproval in this area, some of which we deem as verging on the frivolous but which may be mentioned to demonstrate the character of a portion at least of his complaints.

■ Appellant takes a remark made at the preliminary hearing by defendant's counsel out of context when he opened his cross-examination of the complaining witness with several comments during which he said to the witness, "if perhaps he [referring to defendant] didn't do it." This remark is completely understandable to this court, and we believe even reasonable. It was preliminary to cross-examination, and to have placed the witness on the defensive and aroused antagonism prior to the beginning of this examination would indeed have been a questionable tactic.

■ There was a further rather amazing argument made that trial counsel so misadvised the judge that he would not have understood the burden of proof beyond a reasonable doubt was upon the State, when by taking a phrase out of context in his argument trial counsel said defendant had the burden of proving himself innocent. Counsel's statement was a mere mention of the difficulty encountered in rape cases, one which this writer has heard argued before in such cases, and which was expressed by Lord Hale as follows:

> "* * * but it must be remembered that it is an accusation easily to be made and hard to be proved; and harder to be defended by the party accused, tho never so innocent." 7 Wigmore on Evidence, § 2061, p. 345 (3d Ed.).

To suggest to this court and to anyone reading this argument that such statement made in the course thereof would mislead a competent trial judge to believe that the burden of proof in rape cases is less than proof beyond a reasonable doubt is both unfair and ridiculous.

■ Complaint is made that counsel did not challenge the unfairness of the lineup under constitutional standards and further that it was error to fail to ask the court for an in camera hearing on the admissibility of the evidence in relation to this lineup. It is to be noted that defendant was represented at that time by an Idaho attorney. No objection was made to the conduct or fairness of this proceeding at that time. Appellant's counsel does not demonstrate how this was prejudicial and why it failed to comply with constitutional stand-

---

1. See Jaramillo v. Turner, 24 Utah 2d 19, 465 P.2d 343, 345, for remarks of Justice Ellett.

2. Further see Bendelow v. United States, 5 Cir., 418 F.2d 42, 50, certiorari denied 400 U.S. 967, 91 S.Ct. 379, 27 L.Ed.2d 387, and cases cited under footnote 9.

ards. The complaint that it was error in itself not to request an in camera hearing to determine the admissibility of this evidence falls of its own weight. This was a trial to a court without intervention of a jury. There would not be any advantage apparent to this court which might accrue by the physical transfer of the place of hearing from the courtroom to the chambers, and the prejudicial effect is unexplained.

There are several other suggested errors made by the defense counsel, all of which we have examined, but which in our view are of such minor nature that discussion is unnecessary; neither is their prejudicial effect demonstrated. Several of these are based upon what appellant's counsel now deems an insufficient cross-examination of the complainant. The handling and examination of witnesses is a matter of trial strategy that might always arouse comment by a kibitzer.

Appellant then complains that these errors were compounded by waiver of a jury. This question is unavailable to the defendant at this time. He signed a written waiver sometime prior to this hearing and immediately prior to the commencement of the trial reaffirmed to the trial court his desire to waive a jury. The brief makes no suggestion that appellant was in any manner influenced or coerced to do this. We cannot resist the temptation at this time, in spite of counsel's argument, to suggest that he may well have been wise in a case of forcible rape of this character to have waived a jury because jurors might well be more apt than a trial judge to feel a sense of outrage and revulsion at the very nature of the offense irrespective of the proof.

█ The fact that counsel does not object to the admission of evidence which may be technically questionable is not evidence that a party was deprived of his right to effective assistance of counsel. Particularly is this true if the evidence be not regarded by the appellate court as prejudicial, Johnson v. United States, 8 Cir., 362 F.2d 43, 47, there being many rea-sons counsel do not always object to evidence which is questionable.

In connection with appellant's claim of ineffective counsel in this case, we find the following words from United States v. Benthiem, 1 Cir., 456 F.2d 165, 167, most appropriate and descriptive:

"The defendant contends that the ineffectiveness of his appointed counsel deprived him of his sixth amendment rights. To support this allegation he has assiduously culled the record for any and every conceivable error. He alleges, *inter alia*, that his attorney failed to object on various occasions to leading questions asked by the prosecutor, to hearsay evidence and to unresponsive answers. He also claims that his attorney failed to cross-examine vigorously enough and that he failed to prepare the case thoroughly. We have viewed all these alleged shortcomings separately and cumulatively and find no substance to any of them. Ineffective counsel, in the constitutional sense, means representation such as to make a mockery, a sham or a farce of the trial. Bottiglio v. United States, 431 F.2d 930 (1st Cir. 1970). Defendant's contentions do not approach this."

We find this further interesting comment, particularly directed at the failure of counsel to object to the testimony, from Rivera v. United States, 9 Cir., 318 F.2d 606, 608:

" * * * Assuming that counsel erred * * * in failing to object to the admission of evidence, more is required to constitute denial of the effective assistance of counsel guaranteed by the Sixth Amendment. This court has repeatedly said that to be sufficient the allegations must disclose a performance by counsel so incompetent as to make the trial 'a farce or a mockery of justice.' Stanley v. United States, 239 F.2d 765, 766 (9th Cir. 1956). * * *"

Suffice to say we have examined the complete record in this matter and it is our determination that appellant's counsel at the trial gave this defendant a vigorous and determined defense. It is to be noted that he successfully opposed the State's at-

tempted discovery, vigorously asserted and secured exclusion of certain witnesses who came into the courtroom during the trial, and presented a thoroughly prepared alibi supported by witnesses. An examination of the argument of trial counsel at the close of the case compares favorably with the argument constructed, urged, and argued in appellant's brief, which was the product of a leisurely process with time for exhaustive drafting and expression.

We find no basis for the claim that defendant was deprived of due process because of inadequate counsel.

Affirmed.